Alright everybody, welcome back for the fourth and final day of our sitting here in Montgomery. It's been a great week. I look forward to capping it off here with you today. Before I get going, I'll just give you a couple of rules of the road. You'll understand these I think implicitly. We've read your briefs, the underlying case materials, the statutes, the record. So in the limited time that you have before us, we would ask you to just get right to the heart of your issue so that you don't waste your own precious time with a bunch of factual and procedural ramp up that we don't need to hear. Second, you'll understand the traffic light system that we have here. When you see the yellow light come on, just please know that your time is waning. And when the red light comes on, we'd ask you to begin to wrap up. I won't cut you off mid-syllable or open a trap door into which you disappear, but we would ask that you wind up. And so with that, we will call the first case, which is 21-12-276, Jennifer Case v. Kay Ivey. We have Mr. Moore here for the appellants, Mr. Harris here for the appellee. Mr. Moore, whenever you're ready, you may proceed. Thank you, Your Honor. It's an honor to be here. I want to apologize. I lost my button on my coat, so I'm going to be casual. I have a VA hearing test on Monday, and I think I was prepped this morning. First, let me point out, Your Honor, we will not be asking for a TRO in this case. We're asking for nominal and actual damages for a completed violation of a constitutional right. Never before in the history of our country have we seen such an abuse of power due to this COVID epidemic. I'm reminded of what Justice Gorsuch said that even in times of crisis, and especially in times of crisis, it's our duty to hold governments accountable to the Constitution. That's what this case is about. We've had churches have been closed, businesses selectively have been shut down, and people have been told to stand six feet apart and wear a mask and dress according to what the government says, and in fact, never to leave their homes. Our constitutional rights are indeed in danger of being taken by a violent precedent. This case is simply trying to stop such. But I think the AEMA passed in 1955, if the writers of that document could see what happened under their document, they would be shocked. Can I ask you just one quick question? I take from the first thing you said that you're kind of walking away from the injunctive relief. Are you sort of conceding that those claims are moot, the injunctive relief claims are moot? They were an injunction, Justice. Got it. On the second, with respect to the damages claims, you understand, of course, that you've got to overcome this qualified immunity hurdle. Oh, yes. And so with respect to the piece of qualified immunity in which we try to ascertain whether the law was clearly established, this court has said that there are basically three ways that that can happen. Either you need a materially identical precedent or a more broadly articulated constitutional rule that applies to these facts, clearly, or a situation that while precedent hasn't addressed it, it's so obviously clear that anybody, any sentient being would understand that they're violating the rights. So at least in the portions of your brief that I've focused on, I don't really see much case law, frankly. You know, there are very few citations to cases, and that's typically how we determine that the law has been clearly established. I don't even think I saw the you intend to overcome that barrier? Well, Your Honor, first, nothing can be more clearly established in the United States Constitution to any lawyer or judge in a case. The United States Constitution in Article I, the First Amendment, I should say, states clearly, Congress shall make no law respecting the establishment of religion or preventing free exercise thereof or abridging the freedom of speech or the press or right of the people peaceably to assemble and petition the government for redress of grievances. All of those things have been violated in this case. We have put forth cases, Everson v. Board of Education, and we've put forth Employment Division v. Smith. Both have been disregarded by the appellees in this case. We feel like we've put forth case law as well as a clearly established law. So, all right. Well, so let me ask you this just then as a follow-up. So Smith actually sort of goes the other way, right? I mean, Smith, you know, there's a lot of ferment about Smith, whether it was rightly decided or wrongly decided, but Smith upheld the statute and issue that, you know, it determined that it was neutrally and generally applicable, and so it upheld it. A lot of hue and cry about that, but that is the law coming out of Smith. So I think you're kind of left with Everson. So how does Everson clearly establish a specific rule that applies to this case? Before I go to Everson, Your Honor, Smith is clearly on our side. Okay, good. We signed it. May I approach the court? Sure. Do you have some handouts? Well, we have... Beautiful. Thank you. I'll point out, Your Honor, that Smith is very relevant in this case. This was a case in 1990 by Justice Scalia, written by Justice Scalia, in which even the dissent recognizes there are times where religious liberty can't be overcome by valid neutral laws of general applicability, and that was recognized in the dissent in Smith. Specifically, the dissent said there are areas of conduct protected by the Free Exercise Clause of the First Amendment and thus beyond the power of the State to control, even under regulations of Your Honor, the Employment Division versus Smith, the first paragraph there says the state would be prohibiting the free exercise of religion if it sought to ban such acts or abstentions only when they're engaged in for religious reasons. The defendants disingenuously have stated just that this case is just the opposite. Defendants have argued that the word only changes the meaning of the sentence and state in their appellate brief, there is no allegation that the state's response to the pandemic affected only acts engaged in for religious reasons, i.e. as long as the restrictions were placed on other activities, churches could be restricted. That's their implication. But if you go back in Smith and you look at the full paragraph, but the exercise of religion often involves not only belief and profession, but performance of or abstention from physical acts, assembling with others for worship service, participating in sacramental use of bread and wine, proselytizing and abstaining from certain foods and certain modes. It would be true, we think, that no law or no case of ours has involved this point. This one does. This case does. That a state would be prohibiting the free exercise of religion if it sought to ban acts or abstentions only when they're engaged in for religious reasons. You see, what they've done is twist what acts they're talking about. Smith identified the acts. When religious liberty is directly involved with the association assembly of the church, it can't be prohibited. That's what's been done in this case. So Smith is directly relevant. In fact, in Smith, Your Honor, they say this. It's easy to envision a case in which a challenge on freedom of association grounds would likewise be reinforced by free exercise cause concerns. An individual's freedom to speak, to worship, and to petition the government for redress of grievances could not be vigorously protected from interference by the state if a correlated freedom to engage in group effort toward those ends were not also guaranteed. The assembly of church has never been interfered with in the history of our country. Nowhere has there been a restriction or designation that you These rules that have been made by the governor of this state are completely arbitrary. When they allow liquor stores to be open at 50% capacity as essential services and restrict churches to 10 or going to a driving service where they have the cars six feet apart, it's ridiculous. It's arbitrary. It's a violation of the procedural due process of the 14th Amendment. I think employment division in Smith, that was where they got valid and neutral laws of general applicability. But Justice Scalia addressed specifically assembly, as did the dissent. So I think that's very relevant. Can I just ask you this question? If we assume that the rule coming out of Smith is as favorable as you suggest, I guess the most that you could get out of Smith would be application of some sort of heightened scrutiny, right? So we'd have to do compelling governmental interest and narrow tailoring? No, sir. So you think this is like a per se violation? We have an absolute jurisdictional argument in Smith. I don't think I understand what you mean by that. That's what Scalia was talking about. Just explain, unpack for me what you mean by the absolute jurisdictional argument. Okay. There are certain areas of religious liberty, which in combination, he called it hybrid rights, like association. Then when you get together, that can't be prohibited. It's absolutely out of bounds of government. So in a hybrid rights claim, your suggestion is that there's no scrutiny involved. It's just like a per se violation of the Constitution? Absolutely. Yes, sir. And is there anything that would have put sort of an ordinary governmental actor on notice of this sort of per se rule other than Smith? I don't think the governor is an ordinary actor in this case. I think the governor is holding a responsibility of government. I can see clearly everybody in this room knows In fact, that's what Everson said. That's what Justice Hugo Black wrote in Everson. If the First Amendment establishment clause means anything, it means that government can't tell you go to church or restrict you from going to church. It can't punish you for assembly or non-assembly. And I'm quoting. But what they said is Everson wasn't applicable because it didn't address these issues. Well, Everson is applicable. And he does address these issues. And I'll submit this. That was the first establishment clause case in the history of our country, according to Justice Wally Rutledge, who voted in the dissent for the first time to address these. Okay, very well. You have your full rebuttal time remaining. And Mr. Harris, we'll hear from you. Good morning. Committee, please report. Reed Harris here for Governor Ivey and State Health Officer Dr. Harris. This court should affirm the district court's dismissal of the amended complaint for two reasons. First, as my friend on the other side, I think, has conceded, the claims for injunctive relief are moot or they lack standing at the outset of the litigation. And second, the claims for monetary damages, which includes both compensatory and nominal damages, are barred by qualified immunity. As to the claims for injunctive relief, and I don't mean to beat a dead horse, but to be completely clear, it's not just temporary injunctive relief or preliminary injunctive relief. But the state's position is that the claims for injunctive relief as a whole are moot in this case, and that they're to the extent that they were standing to bring such claims to begin with. But I'll move along from that point to the qualified immunity analysis because I believe that's conceded here. As to the claims for damages as a preliminary point, I wanted to point out that claims for nominal damages are barred by qualified immunity in the same way that claims for compensatory damages are. In the reply brief, in any event, the appellants made much of Usaboonum, the Supreme Court's new case, that reversed this court on nominal damages. But that case says nothing and has nothing to say about the applicability of sovereign or qualified immunity that state actors might be entitled to in a case like this. So the doctrine of mootness, while the claims for money damages in this case may not be moot, they are nevertheless barred by qualified immunity, as I believe the court pointed out here earlier. As another note about nominal damages, it's also worth pointing out before the district court, there was no discussion of nominal damages as something distinct from other damages in this case. The defendants argued in our motion to dismiss that those damages were barred by the relevant immunities and the district court so held sovereign immunity as to the official capacity claims, qualified immunity as to the individual capacity claims. So let's just kind of get to qualified immunity. Let's hear your response to Mr. Moore's argument about, I think Everson and Smith are really the only two cases that the other side has cited, at least with respect to religion. Let's hear your response to Smith. Yes, Your Honor. So the rule of Smith that the law was neutral, the general rule of Smith, the laws that are neutral and generally applicable don't violate the free exercise clause of the Constitution. We think here that the case is not materially identical or similar, certainly. And for that matter, the rule that the laws must be neutral and generally applicable, there is no indication in Smith or in this court or that court's later precedent that a violation of that rule, that the state action must be neutral and generally applicable, was clearly established in this case and in these circumstances in the health orders that did broadly regulate the state in response to these sorts of emerging conditions of the pandemic. So as to Smith, I think looking in light through the lens of the fact that this was an emergency situation, as Chief Justice Roberts pointed out in his South Bay concurrence, and as this court recently recognized in Swain, the idea that the emergency conditions of a pandemic further, it's the state's position, further emphasize the fact that any allegation that the plaintiffs make doesn't show a violation of clearly established law based on the dynamic conditions and the way that things were developing in the state. And how Governor Ivey and Dr. Harris were working to tailor their response to the changing conditions and with the novel virus. And in doing so, they didn't violate any clearly established law that had been established by this court or by the United States Supreme Court. As you read Smith, is there some latent rule in Smith that there are certain violations of the free exercise clause that are per se violations that there simply is no scrutiny that we engage in? No, Your Honor. I'm aware generally of hybrid rights. I'm not prepared to discuss that today, unfortunately. And I don't believe I was on notice of that in the briefing, but I'm unaware of any sort of rule that would require a per se invalidation of government action and certainly not based on Employment Division v. Smith. What about Everson? He's got a quote from Everson. Similarly, Your Honor, I don't think that anything in Everson about separation of church and state under the Establishment Clause or anything else had put the defendants on notice of any violation of clearly established law. It seems to me he's traveling under this quote that says that the religion clauses, if they stand for anything, they can't be used or the government can't force or influence a person dot, dot, dot, to remain away from church against his will. Yes, Your Honor, and I think that in the context of this case and as the Court's precedent continued that no part of that reasoning and the holding of Everson would put the defendants on notice in this case, that there would be a clearly established constitutional right to be able to do, to be exempt from the neutral and generally adequate rules in response to the COVID-19 pandemic. One other point about the constitutional question. Why is that not a rule with obvious clarity? I'm looking at the same quote. The government may not force or influence a person to go to church or to remain away from church against his will. That's Everson. And then Smith pretty much says the same thing. The state would be prohibiting free exercise if it banned acts when they were engaged in for religious reasons and only because of religious reasons. So why not just kind of a fundamental per se open and obvious clarity? You can't prevent somebody going to church. Let's try this. There's no pandemic. Can the government say you can't go to church? I don't believe so, Your Honor. Okay, all right. So then we get, okay, there's a health crisis. So they can say then you can't go to church. That's basically what you're saying. As part of a scheme that's neutrally and generally adequate, yes, Your Honor. And so then we have to draw the line. If we're in the scheme, how bad is the health crisis? I'm sorry, Your Honor. How bad is the health crisis? The problem with your scheme here is that you could go to lots of secular places with 50 or people more, but you couldn't go to church with 10 or more. Yes, Your Honor, I believe you're referring to the – Why is that just clearly wrong? Well, Your Honor, I think that might be best addressed by how the United States Supreme Court treated similar laws. So, for example, the order that Your Honor is referring to was expired May 11th of 2020 in the state of Alabama. And then in late May, that's when the Supreme Court rejected a request for injunctive relief about a stricter law coming out of California, and that was in South Bay. And then the United States Supreme Court did not grant any injunctive relief, emergency injunctive relief, until November of that year. We understand all that. We're hearing damages for the period of time that the law was in effect. Yes, Your Honor. I just meant to – as an example of why it wasn't clearly established for qualified immunity purposes because the Supreme Court was regularly rejecting these requests even after the period of time in which Alabama's regulations were in effect. So I just meant to say that as sort of illustrative of the idea that the constitutional rights weren't clearly established, and certainly not in May of 2020 as the United States Supreme Court didn't first issue an order related to these sorts of issues until November of 2020, several months later. So you're talking about their temporary rulings? Yes, Your Honor. That they refused to grant stays early on? That's right. Until they heard the merit? That's right, Your Honor. They only considered the likelihood of success on the merits in those original – But do you think their current – that recent case clearly establishes the law? The emergency – the motions panel or the emergency applications, you mean? No. The opinion on the merits where they said, I think it was New York couldn't do what they were doing. Sure, the – On orange-red districts and saying – Roman Catholic Asses v. Cuomo, yes, Your Honor. Does that clearly establish the law? It may. I think it's a closer question. As to these facts, it's not clear to me. I think that it – my understanding is that that was still a motions – or an application for emergency relief. And I think it's not completely settled, the binding nature of those opinions. But it's certainly a much closer question today than it was in May of 2020, at which point it doesn't seem that it was clearly established by a case that's materially similar. Or in a way that would require a finding of obvious clarity, certainly. And one point about the constitutional question and the application of qualified immunity is that this court is not required to issue a ruling on the constitutional question itself because the defendants have inserted this qualified immunity defense. And in the circumstances and in this case, there are many good reasons not to reach that unnecessary part of the qualified immunity analysis. In Pearson v. Callahan, in which the Supreme Court changed the rules and said that the lower courts can consider the qualified immunity analysis in any order it wants. It listed several circumstances in which the court – in which the lower courts may not – or might not want to address that constitutional question, including many factors in a case just like this. So at the pleading stage, before facts have been developed, which of course this case was on a motion to dismiss. Similarly, when there's been inadequate briefing for one reason or another, where as here, most of the briefing has been about jurisdictional issues, standing issues, and the application of qualified immunity. There's relatively little about the underlying constitutional questions. And then finally, the ability of – reviewability or of the defendants to be able to continue to press a claim in which there would be – in the event of the application of qualified immunity, the defendants wouldn't proceed obviously in the district court for facts and other evidentiary proceedings related to qualified – or related to the existence of an underlying constitutional violation. So that each of these things weigh against reaching that question in this case, and instead just applying straightforwardly qualified immunity because there is no clearly established right. I'm more than happy to answer any questions from the court at this time, and otherwise I'm happy to cede the time to the appellant. Okay. I think we're good. Thank you so much. Mr. Moore, you've got your full five minutes of rebuttal time remaining. Thank you, Your Honor. First, a few points. We did mention other cases. In fact, we mentioned U.S. v. Reynolds, which is one of the first religious liberty cases in the country, but it addressed also separation of church and state. Reynolds said to suffer or allow the civil magistrate to intrude his powers into the field of opinion and restrain the profession of propagation of principles on supposition of the own tendencies and dangerous fallacy, which at once destroys our religious liberty. That is – it is time enough for the rightful purposes of civil government for its officers to interfere when principles break out into overt acts against peace and good order. That's the only time – and then he said, in these two sentences lies a true distinction of what properly belongs to the church and what to the state, as did Scalia addressed in the Edison v. Board of Education. He said there are decisions – the only decisions we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated actions have involved not the free exercise clause alone, but the free exercise clause in conjunction with other constitutional protections such as freedom of speech or the press, and I could add freedom of assembly. And he said that this case doesn't involve that. Can I ask you a quick question just about your proposed per se rule? So is it your submission that there is no circumstance, literally no circumstance, in which the government could for any period of time issue a shelter-in-place order that would, in effect, prevent people temporarily from going to church? That's our position. So there's – I mean there's a nuclear attack, and the government cannot say, hey, look, everybody's – without respect to liquor stores, but like everybody's got a shelter-in-place for the next 48 hours, and it happens to be a Saturday. Well, first, your Honor, the churches aren't like bodies that just simply obey government. They have their own bodies and their own decisions, and yes, there is a strict separation of church and state. We must keep this wall high and impregnable. We cannot approve the slightest breach. So said Justice Hugo Black. I'm especially connected with that Everson versus Board of Education, not to show my age, but I was born on the day that that opinion came out. It was decided on February 10, 1947. I was born the next day. Mr. Moore. Yes, sir. Would you agree that the government could order quarantine of people who contracted disease? Yes. When you were a child and when I was a child, people had whooping cough, and they had diphtheria, and they had chicken pox and mumps and everything else, and they would put a sign on your door, different color. You couldn't go out for so many days. Yes. Okay. You agree that that would be – that would keep people from going to church? Well, if they're – Quarantined. If they're quarantined, generally the definition of quarantine in the dictionary is – Well, let's assume, just as a practical matter, people would be quarantined and they could not go anywhere. Right. Would that be constitutional? Yes. Quarantine has been recognized under the laws as constitutional. Well, this is a form of quarantine. It's quarantining healthy people, sir. It's a lot different. Well, I understand, but it's a form of quarantine so that healthy people won't get sick. Either healthy people or sick people won't be endangered. Well, under the AEMA, the governor has authority. All I'm saying is that would be subject to scrutiny, wouldn't it? This whole area is subject to scrutiny at best. Whether it's heightened scrutiny or strict scrutiny. Religious liberty. I understand, but the quarantine aspect of it, in the face of a constitutional challenge under the First Amendment, freedom of association or the religion clause, would be subject to scrutiny, wouldn't it? For somebody to realize that the law is clearly established, they would have to take into account whether or not the law could survive scrutiny. Scrutiny has always been applied in religious liberty cases, but not in jurisdictional cases. The case of Everson v. Board of Education states this. Madison was certain in his own mind. Now, this is Everson. Madison was certain in his own mind that under the Constitution, there is not a shadow of right in the general government to intermeddle with religion. And that this subject is, for the honor of America, perfectly free and unshackled. The government has no jurisdiction over it. That's why it says Congress shall make no law. If Congress can't make a law, certainly the governor of Alabama can't make a law preventing healthy people from going to church. And if that's the case, then it's very clear she violated the Constitution of the United States. And anybody knows that church restriction has never been allowed in this country. And if we allow this precedent to proceed, then we are under a dangerous, just as Judge Hull mentioned, they could do it for anything. And they will do it for anything. To quote the memorial remonstrance, it is proper to take alarm against the first experiment on our liberties. The freemen of America did not wait to usurp power. It strengthened itself by exercise and entangled the question in precedence. They saw all the consequences in the principle, and they avoided the consequences by denying the principle. When a governor tells everybody to stay home, but essential services like a bar and a liquor store may remain open, and that's in April 10th, April 3rd, and they renewed April 10th orders of the governor. Something's wrong. Something is desperately wrong. The governor's orders under the AMA do not say that she can make quarantine laws. She's to uphold the quarantine laws of the state. Likewise, violation of closing businesses selectively violates Article 1, Section 10 of the Constitution and Section 22 of the Bill of Rights of the Alabama Constitution. Selective leaving Walmart open while at the same time closing stores that sell the same goods is arbitrary and capricious. It's vague. You can read through these orders and put yourself in the situation of being in a group of 10 people and somebody comes up. Who's liable? Are you liable? You were there before they came up. These laws are made procedurally in violation of the due process of the 14th Amendment. Very well, Mr. Moore. Thank you so much. I think we have your case.  All right. That case is submitted. We'll move to the second.